UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ANOOP PILLAI, <br><br> PLAINTIFF <br><br> v. <br><br> ASTA CRS, INC. and IQLOGG, INC <br><br> DEFENDANTS. | CASE NO. 1:21-CV-00596 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff, Anoop Pillai, and submits the following Complaint against Defendants Asta CRS, Inc. ("Asta") and IQLogg, Inc. ("IQLogg") (collectively "Defendants").

## PARTIES

1. Plaintiff Pillai is an individual domiciled in Gaithersburg, Maryland.

2. Defendant Asta is a stock corporation organized under the laws of the Commonwealth of Virginia and with a principal place of business in Ashburn, Virginia.

3. Defendant IQLogg is also a stock corporation organized under the laws of the Commonwealth of Virginia and with a principal place of business in Ashburn, Virginia.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction over Pillai's claims arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 et seq., pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Pillai's claims arising under Virginia law pursuant to 28 U.S.C. § 1367 because those claims arise under a common nucleus of operative fact.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because it

is a judicial district in which all defendants reside and in which a substantial part of the events or omissions giving rise to the claims occurred.

## FACTUAL ALLEGATIONS

### Defendants' business model and use of Pillai to provide services

6. Defendants are information technology ("IT") companies that provide consulting and staffing services.

7. Upon information and belief, Defendants are affiliate companies that share a common owner.

8. In providing staffing services, Defendants enter into staffing agreements (also known as Independent Contractor Agreements) with entities seeking IT personnel.

9. Typically, the entities with which Defendants enter into staffing agreements are recruiting or staffing agencies that are seeking IT personnel on behalf of their own clients. Defendants use their own employees to fulfill staffing needs for these third-party clients.

10. Beginning in or around September 2016, Asta employed Pillai as Business Systems Analyst.

11. As part of his job duties for Asta, Pillai performed IT services for other entities pursuant to staffing agreements between Asta and those entities.

### The IT Staffing Agreeement

12. Upon information and belief, in or around 2018 non-party Salesforce.com., Inc. ("Salesforce") retained non-party Robert Half International Inc. ("Robert Half") to acquire an IT professional for Salesforce. Thereafter, Robert Half retained non-party I.T. Staffing, Inc. ("IT Staffing") to find an IT professional to satisfy its obligation to Salesforce.

13. In or around October 2018, IT Staffing entered into a staffing agreement with Asta

(the "IT Staffing Agreement").

14. Pursuant to the IT Staffing Agreement, Asta agreed to provide temporary staffing services to Salesforce to satisfy IT Staffing's obligation to Robert Half. In exchange, IT Staffing agreed to pay Asta for those services at a predetermined hourly rate.

15. To effectuate the IT Staffing Agreement, Asta agreed to pay Pillai at a set hourly rate to perform services for IT Staffing pursuant to the IT Staffing Agreement.

16. Beginning in October 2018, Pillai began to provide services to Salesforce.

17. In or around late 2018, Asta began to experience problems procuring payment from IT Staffing under the IT Staffing Agreement.

18. In or around January 2019, Asta advised Pillai that it would be deducting wages from his paycheck to compensate for losses Asta incurred by IT Staffing's failure to pay Asta.

19. Thereafter, in April 2019, Asta withheld $3000 from Pillai's paycheck for work he performed during the month of February 2019.

20. Though the April 2019 deduction was listed in Pillai's paycheck as a "401k" deduction, Pillai did not have a 401k account, nor any other retirement account, for which the deduction was made.

21. In addition, Asta declined entirely to pay Pillai for work performed during other months, including, but not necessarily limited to, January and March 2019.

22. In or around March 2019, Pillai transitioned from an employee of Asta to an employee of IQLogg.

23. Around this time, IQLogg entered into a separate staffing agreement with Robert Half (the "Robert Half Agreement") whereby IQLogg would provide staffing services to Salesforce to satisfy Robert Half's obligation to service Salesforce with an IT professional.

24. IQLogg agreed to pay Pillai at a rate of $77 per hour for services to Salesforce under the Robert Half Agreement.

25. Notwithstanding IQLogg's agreement with Pillai, IQLogg withheld over $14,000 from Pillai's paychecks from April to September 2019.

26. In addition, IQLogg paid Pillai at a reduced rate from approximately April 2019 to April 2020.

27. In or around March 2021, Pillai's employment with IQLogg ended. To date, neither Asta nor IQLogg has paid or reimbursed Pillai for the full amount of unpaid wages due him for work performed.[1]

## COUNT I—FAILURE TO PAY MINIMUM WAGE UNDER THE FLSA
### (against Asta)

28. Pillai incorporates the preceding paragraphs by reference.

29. At all relevant times, Asta was an "employer" within the meaning of 29 U.S.C. § 203(d).

30. From approximately September 2016 to March 2019, Pillai was an "employee" of Asta who was engaged in commerce within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

31. For the months including, but not necessarily limited to, January and March 2019, Asta did not pay Pillai any wages for hours worked.

32. Accordingly, Asta failed to pay Pillai minimum wages in violation of 29 U.S.C. § 206.

33. Asta's violation of 29 U.S.C. § 206 was "willful" within the meaning of 29 U.S.C.

---

[1] On May 8, 2021, following a series of exchanges between Defendants and Pillai's counsel, Defendants submitted direct deposits into Pillai's bank account without explanation as to why these deposits were made or what, if any, prospective damages this amount was intended to cover. The amounts deposited are not sufficient to satisfy Defendants' obligations to Pillai described herein and will be held in trust or otherwise not withdrawn for personal use pending the outcome of a resolution of this matter.

§ 255(a).

34. As a direct and proximate result of Asta's failure to pay Pillai minimum wage, Pillai has incurred substantial damages.

**COUNT II—FAILURE TO PAY WAGES UNDER THE VIRGINIA WAGE PAYMENT ACT, VA. CODE § 40.1-29**
**(against both Defendants)**

35. Pillai incorporates the preceding paragraphs by reference.

36. At all relevant times, Defendants were "employers operating a business" within the meaning of Va. Code § 40.1-29.

37. From on or about September 2016 to March 2019, Pillai was an "employee" of Asta within the meaning of Va. Code § 40.1-29.

38. From on or about March 2019 to March 2021, Pillai was an "employee" of IQLogg within the meaning of Va. Code § 40.1-29.

39. Upon separation from his employment with Defendants' companies, Defendant failed and continue to fail to pay Pillai wages or salaries due to him for work performed prior to his termination.

40. At all relevant times, Defendants' failure to pay wages or salaries owed to Mr. Pillai was knowing and intentional.

41. As a direct and proximate result of Defendants' knowing and intentional violation of Va. Code § 40.1-29, Pillai has incurred substantial damages.

**COUNT III—BREACH OF CONTRACT**
**(against Asta)**

42. Pillai incorporates the preceding paragraphs by reference.

43. Asta entered into a binding, valid, and enforceable agreement with Pillai to pay him at a specified rate for his services.

44. Pillai performed services in accordance with his obligations under the agreement with Asta.

45. Notwithstanding the performance of Pillai's obligations, Asta beached the agreement by failing to pay Pillai for his services in accordance with the agreement.

46. As a direct and proximate result of the breach of the agreement, Pillai has suffered substantial damages, including, but not necessarily limited to, lost wages.

### COUNT IV—BREACH OF CONTRACT
### (against IQLogg)

47. Pillai incorporates the preceding paragraphs by reference.

48. IQLogg entered into a binding, valid, and enforceable agreement with Pillai to pay him at a specified rate for his services.

49. Pillai performed services in accordance with his obligations under the agreement with IQLogg.

50. Notwithstanding the performance of Pillai's obligations, IQLogg beached the agreement by failing to pay Pillai for his services in accordance with the agreement.

### COUNT V—QUANTUM MERUIT
### (against both Defendants)

51. Pillai incorporates the preceding paragraphs by reference.

52. Pillai conferred a benefit on Defendants by performing services for Defendants for the duration of his employment with each of them.

53. Defendants were aware of the benefits conferred upon them by Pillai.

54. Defendants accepted the benefits conferred upon them by Pillai but failed to equitably compensate him for the benefits conferred.

55. As a direct and proximate result of Defendants inequitable acts, Pillai has incurred

substantial damages.

## PRAYER FOR RELIEF

56. WHEREFORE, Pillai respectfully requests that the Court entered judgment in his favor granting him legal and equitable relief as the Court may deem just, including, but not limited to

   a. compensatory and consequential damages;

   b. liquidated damages;

   c. pre and post-judgment interest as provided by law;

   d. reasonable attorneys' fees and costs; and

   e. any other relief to which Pillai is entitled by law and to which the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff Anoop Pillai demands a trial by jury on all triable issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: May 12, 2021

Respectfully submitted,

_____/s/_____
Benjamin D. Johnson (VSB No. 90812)
PIERCE MCCOY, PLLC
313 East Broad St., Suite 315
Richmond, Virginia 23219
Tel: 804-413-4021
Fax: (757) 257-0387
bjohnson@piercemccoy.com

Joshua L. Jewett (VSB No. 76884)
PIERCE MCCOY, PLLC
101 West Main Street, Suite 101
Norfolk, Virginia 23510
Tel: (757) 901-4382
Fax: (757) 257-0387
jjewett@piercemccoy.com


*Counsel for Plaintiff Anoop Pillai*